[Crim. No. 9498.    Second Dist., Div. Three.    Dec. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ABRAHAM R. ABARBANEL, Defendant and Appellant.

Raoul D. Magana and Ellis J. Horvitz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.*—Defendant Abarbanel was tried on an indictment charging in Count I a conspiracy to commit abortion, a violation of Penal Code, section 182, and in Count II with having committed an illegal abortion upon Judy Diane Mitchell, a violation of Penal Code, section 274. Before trial a codefendant with Abarbanel, one Hooker, appears to have obtained a dismissal of the charges under Penal Code, section 995. Trial was commenced against defendants Abarbanel, a medical doctor, Solomon and Wilkins, medical doctors specializing in psychiatry, and Edlin, Diane's paramour. At the conclusion of the People's case

*Assigned by the Chairman of the Judicial Council.

motions to dismiss were granted as to defendants Solomon and Wilkins, under Penal Code, section 1385, but denied as to defendants Abarbanel and Edlin. At the conclusion of the trial Edlin was acquitted on both counts and defendant Abarbanel was found not guilty as to the conspiracy count, but was found guilty of abortion. His motion for new trial was denied and he was fined and granted three years probation. From this judgment he appeals.

After becoming pregnant while separated from her husband, Diane visited two gynecologists who both determined that she was pregnant. One of these doctors noted nothing unusual in her behavior and did not find her despondent; the other found her to be very upset on her first two visits, but on her last visit she stated that she now was married and appeared to be in better spirits.

Diane herself testified that she considered herself to be in good health; that she had been having no difficulty with her pregnancy, and further that she considered her mental outlook to be good, and that she had never attempted any acts of self-destruction nor even pondered such possibilities. It appears that Diane and Edlin had a series of disagreements culminating in discussions of the possibility of abortion and appointments were made for her to see three doctors on September 15, 1962. Accordingly Diane visited Dr. Solomon on that date and after being interviewed by him he wrote a letter addressed to appellant stating that in his opinion an interruption of her pregnancy was indicated as necessary to save her life from the possibility of suicide.

Appellant's name was first mentioned by Dr. Solomon in this interview and after a telephone call appellant agreed to see Diane later that morning. At that meeting appellant performed a pelvic examination upon Diane and told her she was four to four and a half months pregnant; and questioned her about her reactions to sexual relations. She testified that appellant advised her that the abortion could be performed and explained the particulars of the procedures to be followed and that the charge would be $1,000 unless hospitalization became necessary in which event the charge would be $1,200, payment, cash in advance.

Diane testified that appellant did not condition the abortion upon receipt of Dr. Wilkin's recommendation but Dr. Wilkins testified that on her first visit to him, after seeing appellant, she stated that appellant would take her case if he concurred in Dr. Solomon's conclusion. After psychiatric

examination and evaluation of Diane, Dr. Wilkins concurred in Dr. Solomon's impression and so advised appellant by letter.

There is ample evidence to support the finding that appellant did interrupt Diane's pregnancy in such manner that she required intensive and prolonged medical attention rendered by appellant and, subsequently, other doctors.

Defendant denied having committed an abortion, but his denial does not fill the hiatus in the proof relative to criminal intent, which it is incumbent upon the People to prove. The prosecution must bear the burden of proving each element of the crime and may not urge defendant's denial of one element in lieu of proof of another. (*People* v. *Keel,* 91 Cal.App. 599, 605 [267 P. 161]; *People* v. *Degnen,* 70 Cal. App. 567, 591 [234 P. 129].)

There is no evidence that any information was ever brought to the attention of appellant which cast doubt upon the reliability and veracity of the recommendations of these psychiatrists. Indeed, by dismissing the proceedings as to both psychiatrists, the court in effect found that there was insufficient evidence of any improper action on their part to justify continuing the criminal action against them, and the jury by acquitting Edlin necessarily absolved him of any criminal act in the charged offenses. By acquitting appellant of the conspiracy count the jury found that he had not acted in concert with another to perform a criminal act, but by its verdict of guilty as to the count charging appellant with a criminal abortion it necessarily found appellant had acted with criminal intent.

The record is utterly devoid of any evidence showing such criminal intent. There is, it is true, testimony that might show a high degree of depravity on the part of appellant. (Diane testified that after appellant had performed the abortion on her he solicited her to perform an act in violation of Penal Code, section 288a), and there is also a great deal of testimony relative to accepted medical practice in the performance of legal abortions, but this evidence does not supply the necessary criminal intent nor is it inconsistent with a therapeutic abortion.

The testimony as to the solicitation to violate Penal Code, section 288a indicates that it was somewhat contradictory. At the trial Diane testified only to a solicitation to commit the act, and denied ever having stated to two physicians who attended her later that the act had actually been accom-

plished, although both these physicians testified she had so told them. All of the above testimony tended to be highly inflammatory and at the best, little related to the charges upon which appellant was tried.

Certain testimony of Mrs. Reyes was admitted to the effect that she had visited appellant with a view to obtaining an abortion during which visit he suggested she see Dr. Solomon and another psychiatrist in order to effectuate a legal abortion. After discussing the cost of the operation appellant suggested Mrs. Reyes go to Tiajuana and have her operation there. This testimony was directed to proving the conspiracy aspects of the charged offenses and, because no finding of conspiracy was made as to any defendant, could not show any independent criminal intent on the part of appellant, pertinent to the instant verdict and judgment. None of this testimony in any way shows criminal intent to commit an illegal abortion.

The criminal intent necessary to support a conviction of illegal abortion must show that it was performed for a purpose other than to save the abortee's life.

*People* v. *Ballard,* 167 Cal.App.2d 803 at p. 805 [335 P.2d 204] states: "It may be well to say at the outset in this case that a great deal of misunderstanding would be avoided in abortion matters if they were considered in the light of the fact that an abortion is not necessarily, in and of itself, an illegal procedure or act. In other words, not all abortions are illegal." Further in the same opinion at page 814 the court said: "Surely, the abortion statute (Pen. Code, § 274) does not mean by the words 'unless the same is necessary to preserve her life' that the peril to life be imminent. It ought to be enough that the dangerous condition 'be potentially present, even though its full development might be delayed to a greater or less extent. Nor was it essential that the doctor should believe that the death of the patient would be otherwise *certain* in order to justify him in affording present relief.' " The court at page 813 stated: "In short the issue, so far as the doctor was concerned, was whether in the exercise of his best skill and understanding in good faith, he believed that it was necessary to perform the work he did perform to save the life of [the mother]."

In the same case at page 817 the court quoted with approval from *People* v. *Hobbs,* 297 Ill. 399 [130 N.E. 779]: " '*The criminal intent necessary to be established to convict an accused charged with committing an abortion is the intent*

*to commit a criminal abortion, that is, an abortion for a purpose other than to preserve the life of the mother.' "*

When it is remembered that in *People* v. *Ballard, supra,* the doctor alone determined that the subject's nervous and mental condition was such as to justify the abortion although no special psychiatric skill on his part appears, while here the record discloses that two qualified psychiatrists recommended the therapeutic abortion and there is no evidence that appellant disbelieved or doubted the validity of these recommendations, we feel that *People* v. *Ballard, supra,* requires a reversal of the instant judgment.

Matters of malpractice, which occupy much of the transcript before us, are for other than the criminal courts unless charged as assaults or batteries. In the instant case it appears that a civil action has been filed based on such malpractice.

A reading of the complete record persuades that under the authority of *People* v. *Ballard, supra,* this judgment must be reversed, as it almost demonstrably appears that the jury found appellant guilty because they believed him to be a bad man rather than because he had committed an illegal abortion within the meaning of the law.

There being a complete lack of proof of criminal intent on the part of the appellant-doctor under the evidence there is no necessity to consider other urged grounds for reversal.

The judgment is reversed.

Shinn, P. J., concurred.

Ford, J., concurred in the judgment.

A petition for a rehearing was denied January 20, 1966, and respondent's petition for a hearing by the Supreme Court was denied February 16, 1966. Traynor, C. J., and Burke, J., were of the opinion that the petition should be granted.