STRAHAN ET AL. *v.* CITY OF AURORA.

(No. 72 CI 1288—Decided April 27, 1973.)

Common Pleas Court of Portage County.

*Mr. Norman Sandvoss*, for plaintiffs.
*Mr. Seabury Ford*, law director, for defendant.

JONES, J. This case arises over a dispute between a group of property owners and the city of Aurora over cer-

tain tap-in charges provided for in Ordinance No. 1972-794 of the city of Aurora adopted on September 12, 1972. The properties of the plaintiffs in question are all within what has been known as Aurora Water and Sewer District No. 1. The pertinent part of Ordinance No. 1972-794 reads as follows:

"*Section 1.* That the connection fee of Five Hundred Fifty Dollars ($550.00) for all properties with existing inhabitable structures as of September 12, 1972 *so assessed* ' for the construction of the water system in Aurora Water and Sewer District No. 1 be, and is hereby waived, provided that:

a. The service connection line is one-inch (1″) or less in diameter;

b. And a water tie-in permit at no charge shall be secured from the Office of the Director of Public Service on or before November 30, 1972;

c. And such permits shall be valid up to and including November 30, 1974."

The court granted a temporary restraining order, which was later made a preliminary injunction. Upon final hearing, at the conclusion of the plaintiffs' case, and again at the conclusion of all the evidence, counsel for the defendant, city of Aurora, moved to dismiss the complaint on the following grounds:

(1) That there had been no proof of any injury or damage.

(2) That there is an adequate remedy at law under Section 2723.03 of the Revised Code.

(3) That there has been no proof of any estoppel.

(4) That the action is prematurely brought.

The court reserved ruling on this motion, and now overrules the same.

Both counsel argued and briefed the case extensively, and the court has reviewed all of the authorities cited by both counsel, together with certain other authorities. As to the first proposition advanced by defendant's counsel, the court does not feel that it is necessary to show an actual injury, and injunctive relief may be granted to pre-

vent injury. See 29 Ohio Jurisprudence 2d 208, Section 34. The testimony in this case shows clearly that certain of the plaintiffs are the owners of vacant lots, and the assessment of a tap-in charge of this magnitude could well impair the value of a vacant lot, and perhaps even of a lot with a house erected on it.

The law is clear that equity may be invoked to avoid a multiplicity of suits, and indeed, an injunction may issue even when there is a legal remedy, if such remedy involves a multiplicity of suits. See annotation, 32 A. L. R. 1266; annotation, 156 A. L. R. 319; and 29 Ohio Jurisprudence 2d 336-337, Section 124. Furthermore, it is stated in 29 Ohio Jurisprudence 2d 209, Section 35, that:

"The avoidance of a multiplicity of actions is also ground for enjoining the enforcement of unconstitutional statutes or ordinances which interfere with property rights, at least where the unconstitutionality of the statute or ordinance is clear."

As to the second portion of defendant's motion, the court does not consider that R. C. Chapter 2723.03 necessarily provides an adequate remedy at law. In fact, R. C. 2723.01 specifically authorizes Courts of Common Pleas to enjoin illegal levy or collection of taxes and assessments and then provides that such courts may entertain actions to recover them when collected. In essence, the statute gives citizens a choice of alternative remedies.

The court will deal with the third branch of defendant's motion in a later part of this opinion. As to the fourth branch of defendant's motion, it is the opinion of this court that one does not have to wait until the actual injury is suffered—but may seek injunctive relief from the court to prevent suffering damage or loss, and this is especially true where the constitutionality of a statute or ordinance is involved. See 29 Ohio Jurisprudence 2d 335, Section 124.

Having disposed of the motion of the defendant, except for that portion of it directed to the claim of estoppel made by plaintiffs, the court will now consider the matter on its merits.

That municipalities may adopt ordinances providing for tap-in charges is established law. In the case of *Englewood Hills* v. *Englewood* (1967), 14 Ohio App. 2d 195, the Court of Appeals for Montgomery County held as follows:

"Municipalities may adopt ordinances providing for tap-in charges for water and sanitary sewer services subject only to the qualification that the fees established by the ordinances must be fair and reasonable and bear a substantial relationship to the cost involved in providing the service to the landowner."

Examination must necessarily be made to determine from the evidence if the tap-in charge in the ordinance under question is reasonable and bears a substantial relationship to the cost involved in providing the service to the landowner, especially since the plaintiffs herein were assessed ratably on a front-foot basis for their proportionate share of the cost of this improvement. In the case of *Zehman Construction Co.* v. *Eastlake* (1962), 92 Ohio Law Abs. 364, the Court of Appeals for this district held as follows:

"An ordinance which imposes a 'tap-in charge' which substantially exceeds the cost to the city of supervising the connection of an adjoining property to a sanitary sewer and which, by the terms of the ordinance, is to be used in making other sewer improvements is unconstitutional and void as applied to a lot owned by one whose predecessor paid for the installation of the sewer under a contract with the city."

Evidence presented by the plaintiffs herein, through witnesses Brown and Hettinger, would indicate that the tap-in charge of $550 is greatly in excess of the cost to the city of supervising connections to this water line. Also, the evidence of witness Neil Anderson, present mayor and former councilman of the city of Aurora, would indicate that instead of the tap-in fee bearing a substantial relationship to the cost of making the connection, it bears some relationship to the over-all debt of the water system of the city of Aurora, and furthermore, would indicate that it is considered necessary to provide funds for further explora-

tion for water and to augment the supply of the city. If the city of Aurora needs additional money to pay off the debts of its water utility, then some method of taxation, or rate increases, should be provided, so that all users of its water system and all beneficiaries of the system bear a proportionate share of the cost of reducing the debt or augmenting the supply of water.

Let us now examine this Ordinance No. 1972-794 to determine whether it meets the constitutional requirements of nondiscrimination and equal protection. In this connection, see *Western Reserve Steel Co.* v. *Cuyahoga Heights* (1928), 118 Ohio St. 544, and *Youngstown Sheet & Tube Co.* v. *Youngstown* (1951), 91 Ohio App. 431 (a decision by the Court of Appeals for this district). There is no question but that a city engaged in operating a public utility must impose equally its charges and rates upon all those it serves, and the law does not permit discrimination as to charges and rates. An examination of Ordinance No. 1972-794 permits of no conclusion except that it is discriminatory. Section 1 of such ordinance, after reciting the provisions of Ordinance Nos. 1967-508C and 1972-781 (providing for a $550 tap-in fee), provides that the fee of $550 will be waived as to all properties with existing inhabitable structures as of a certain date provided that the owner picks up his permit by a certain date, and then actually makes the tie-in by a certain date. Otherwise, the owner of an inhabitable structure will be charged $550 for tying-in to the water system for the construction of which he has already been assessed, as the ordinance recognizes. The discrimination is even more glaring as to vacant lot owners, who are given no opportunity to avail themselves of this waiver, and as the court previously said, this could materially affect the value of these vacant lots.

There is yet another claim of the plaintiffs, namely, that the city of Aurora is estopped from levying a tap-in fee against the water users in Aurora Water and Sewer District No. 1, and that this estoppel arises out of prior conduct and statements made by duly elected officials of the city. The determination of this question required a complete review of the transcript of the evidence on more than

one occasion. That the law of estoppel may be applied to a municipality is clear, the only limitation, other than the general law of estoppel, being that it is confined to cases not involving things *ultra vires*. See 39 Ohio Jurisprudence 2d 272, Section 464. The evidence reveals that on numerous occasions at council meetings and at meetings of the utility committee of council, it was represented by duly elected officials that the people in Aurora Water and Sewer District No. 1 would not have to pay a tap-in fee, but would be charged only their ratable portion of the total amount to be raised by assessment, which was supplemented by a bond issue and a grant from HUD. In fact, just prior to the vote on an initiated ordinance at the general election in November of 1971, which initiated ordinance, if passed, would have terminated this project, the then mayor, George Hettinger, sent a letter to all of the persons involved in this project stating exactly what the charges would be for them to connect into the system, and further stating that there would be no additional charges other than those listed. In his testimony Mr. Hettinger stated that he drew up the letter, signed it and directed that it be sent, with his approval, to all of the residents of Aurora involved in this project.

A careful examination of all of the evidence pertaining to this claim of estoppel convinces the court that the city of Aurora by reason of the conduct, statements and representations made to various residents within this project, is now estopped from levying a tap-in fee against the owners of lots and lands within the district.

In conclusion, it is the opinion of this court that the tap-in charge is unreasonable and bears no relationship to the actual cost of making the water connections, is discriminatory, and that the city of Aurora is estopped, as stated above, and by reason of all of the foregoing the preliminary injunction should be made permanent. Counsel will furnish appropriate journal entry.

*Permanent injunction granted.*