500 A.2d 223 (1985)
Frederick & Jennifer BAGLEY
v.
VERMONT DEPARTMENT OF TAXES.
No. 83-636.
Supreme Court of Vermont.
July 19, 1985.
Smith Harlow & Liccardi, P.C., Rutland, for plaintiffs-appellants.
Jeffrey L. Amestoy, Atty. Gen., and Elizabeth Dennis Anderson, Sp. Asst. Atty. Gen., Montpelier, for defendant-appellee.
Before ALLEN, C.J., and HILL, UNDERWOOD, PECK and GIBSON, JJ.
*224 GIBSON, Justice.
During 1979, taxpayers built a new home in Mendon which included a renewable solar energy system, and in their 1979 Vermont tax return they claimed the credit then available to "resident individual taxpayer[s]" under 32 V.S.A. § 5922.[1]
The Department of Taxes disallowed the credit because taxpayers had not been "resident individual[s]" under 32 V.S.A. § 5811(13) and (11)(A), for the entire calendar year. Taxpayers appealed to the Commissioner of Taxes, arguing (1) that they had been residents for the entire tax year, and (2) that denying them the credit based upon their residency prior to the installation penalized their right to travel and violated the Privileges and Immunities, and Equal Protection Clauses of the United States Constitution.[2]
The Commissioner found that taxpayers failed the full-year residency requirement. She also concluded that taxpayers had no fundamental right to energy credits; the full-year residency requirement served the rational basis of putting renewable energy systems to use year round and, furthermore, had no imaginable deterrent "effect on travel." She therefore also rejected taxpayers' constitutional arguments.
Taxpayers appealed to superior court. In granting summary judgment against them, the court cited no legal authority, explaining only that taxpayers' claims were "without legal merit."
We conclude that the prior residency aspect of 32 V.S.A. § 5922 violated the Equal Protection Clause, and we reverse.

I.
The statute in question, 32 V.S.A. § 5922, clearly extended the credit only to taxpayers who resided in Vermont for the entire calendar year in which the system was installed. The credit was available only to "resident individual taxpayer[s]." "Resident individual" was defined as one "qualifying for residency in this state during the entirety of that taxable year." 32 V.S.A. § 5811(13).[3]
It is equally clear that taxpayers in this case were not in fact "resident individual taxpayer[s]" under the statute, in 1979, because they began residing in Vermont no sooner than June 29, 1979, when they left their prior out-of-state home and moved temporarily into a Mendon condominium pending completion of the new house.
Thus, we are squarely presented with the question of the constitutionality of the preinstallation residency aspect of the taxation scheme: granting the credit to permanent residents who had lived in Vermont from January 1 until the date of installation, but denying the credit to newer permanent residents who moved to Vermont during that year and made an identical installation on the same date.
Regardless of the date of installation, 32 V.S.A. § 5922 effectively imposed two distinct residency requirements. First, taxpayers must have been permanent residents for the balance of the calendar year after installation. There is no dispute that taxpayers satisfied this requirement, a "bona fide continuing residency requirement" of a type approved by the United *225 States Supreme Court. E.g., McCarthy v. Philadelphia Civil Service Commission, 424 U.S. 645, 647, 96 S.Ct. 1154, 1155, 47 L.Ed.2d 366 (1976); see also Martinez v. Bynum, 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983).
Second, however, the statute required taxpayers to have been permanent residents from January 1 of the tax year in question until the date of installation. This requirement constituted a durational prior residency requirement, distinguished in McCarthy, supra (citing Memorial Hospital v. Maricopa County, 415 U.S. 250, 255, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974) (durational residency requirement for free medical care penalized indigent newcomers' exercise of right to migrate, and did not promote a compelling governmental interest, therefore, unconstitutional)).
The United States Supreme Court "has long held that the right to travel, `when applied to residency requirements, protects new residents of a State from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents.'" Hooper v. Bernalillo County Assessor, ___ U.S. ___, ___ n. 6, 105 S.Ct. 2862, 2866 n. 6, 86 L.Ed.2d 487 (1985) (quoting Zobel v. Williams, 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 2312 n. 6, 72 L.Ed.2d 672 (1982)) (citations omitted); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).
Taxpayers ask this Court to invalidate the durational residency aspect of the statute because it fails "to promote a compelling governmental interest," Dunn, supra, 405 U.S. at 339, 92 S.Ct. at 1001 (emphasis in original) (quoting Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)); see also Dunn, supra, 405 U.S., at 342, 343, 92 S.Ct. at 1003, 1004 (requiring a precisely drawn statute choosing less drastic means).[4]
However, the Court's decision in Memorial Hospital, supra, 415 U.S. at 259, 94 S.Ct. at 1082, indicates that unequal treatment based on prior residency does not mandate application of a compelling interest standard where no "basic necessity of life" is involved. See id. at 260 n. 15, 94 S.Ct. at 1083 n. 15 (approving Starns v. Malkerson, 326 F.Supp. 234, 238 (D.Minn. 1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971)); Sosna v. Iowa, 419 U.S. 393, 409, 95 S.Ct. 553, 562, 42 L.Ed.2d 532 (1975). Therefore, the Department of Taxes urges this Court to uphold the classification "if the distinction rationally furthers a legitimate state purpose." Hooper v. Bernalillo County Assessor, supra, ___ U.S. at ___, 105 S.Ct. at 2866.
As in Zobel, supra, and Hooper, supra, we need not resolve this issue, because where "the statutory scheme cannot pass even the minimum rationality test, our inquiry ends." Id. We conclude that the prior residency aspect of 32 V.S.A. § 5922 served no legitimate state purpose.
As the Commissioner noted, the legislative purpose of 32 V.S.A. § 5922 was "to provide income tax relief for those who install certain alternative energy sources." House Bill No. 555, 1977 (Adj. Sess.). In rejecting taxpayers' claim, the Commissioner inferred that credit was limited to full-time residents in order to supplant the *226 greatest amount of nonrenewable energy by encouraging year-round use.
Denying the credit to recent permanent residents bears no rational or legitimate relationship to the legislative purpose. The durational residency requirement addresses a time prior to installation of the system. Obviously, requiring permanent residency before installation does not encourage installation of alternative energy systems and, if anything, discourages it. More important, however, the goal of year-round use of a system after installation bears no legitimate relation to a pre-installation permanent residency requirement. These are valid reasons to require post-installation continuing residency, e.g., McCarthy, supra, but pre installation permanent residency "is a wholly arbitrary basis on which to distinguish among present Vermont [residents]," Williams v. Vermont, ___ U.S. ___, ___, 105 S.Ct. 2465, 2472, 86 L.Ed.2d 11 (1985), which "bears no relation to the statutory purpose." Id.; see also Hooper, supra, ___ U.S. at ___, 105 S.Ct. at 2868.
"`The separation of residents into classes hardly seems a likely way to persuade new [residents] that the State welcomes them and wants them to stay.'" Hooper, supra, ___ U.S. at ___, 105 S.Ct. at 2867 (quoting Zobel, supra, 457 U.S. at 62 n. 9, 102 S.Ct. at 2314 n. 9). Nor is rewarding "past contributions" of citizens a legitimate state purpose. Id. ___ U.S. at ___, 105 S.Ct. at 2869 (citing Zobel). Placing newer residents in a lower tier as "second-class citizens" discriminates on the basis of residence in a way "not supported by any identifiable state interest." Hooper and Zobel make clear that the Constitution will not tolerate a tax credit scheme that "`creates fixed, permanent distinctions ... between ... classes of concededly bona fide residents, based on how long they have been in the State.'" Id. (quoting Zobel, 457 U.S. at 59, 102 S.Ct. at 2312).

II.
The Department of Taxes next asserts that unconstitutionality of the prior residency requirement aspect of 32 V.S.A. § 5922 renders the entire statute invalid, thus preventing taxpayers or anyone else from claiming a credit thereunder.[5] The determinative state law question regarding separability is whether the legislature would have enacted the statute without the invalid portion. Veilleux v. Springer, 131 Vt. 33, 41-42, 300 A.2d 620, 625-26 (1973); State v. Scampini, 77 Vt. 92, 121-22, 59 A. 201, 211 (1904) (presumption of separability if valid and invalid aspects are separable); Hooper, supra, ___ U.S. at ___, 105 S.Ct. at 2869; Zobel, supra, 457 U.S. at 64-65, 102 S.Ct. at 2314-2316.
We conclude that the legislature would have enacted the law even had it lacked the unconstitutional aspect. Scampini, supra. The Commissioner found the legislative purpose was to provide tax relief for alternative energy systems that could be used continually. The invalid prior residency requirement is easily separable, leaving the statute well suited to provide an incentive for all permanent residents  recent and long-term alike  to install renewable energy systems.
Reversed and remanded for the superior court to issue an order instructing the Commissioner to grant taxpayers the credit claimed.
NOTES
[1] The credit is not currently available, having expired in 1984. See 32 V.S.A. § 5922(c) (Supp. 1984).
[2] We do not reach taxpayers' Privileges and Immunities Clause claim. But see Zobel v. Williams, 457 U.S. 55, 60 n. 5, 102 S.Ct. 2309, 2312 n. 5, 72 L.Ed.2d 672 (1982) (clause is "designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"). Taxpayers' claim rests on their unequal treatment, not as citizens of "State A," but as recent citizens of "State B."

Taxpayers also raised no claim under the Proportional Contribution Clause of the Vermont Constitution, Ch. I, Art. 9.
[3] See also the definition of "residency" in 32 V.S.A. § 5811(11)(A) (main volume). But see id. § 5811(11)(A)(i) (Supp.1984), 1981 Adj. Sess. amendment, effective in tax years beginning January 1, 1982 (extending definition to include those in taxpayers' situation, and now in apparent conflict with § 5811(13)).
[4] Under this standard, the Commissioner in this case would have erred simply by grounding her denial of taxpayers' claim on the lack of actual deterrent effect on travel. See Dunn, supra, 405 U.S. at 340 & n. 9, 92 S.Ct. at 1002 & n. 9 (citing inter alia Travis v. Yale & Towne Manufacturing Co., 252 U.S. 60, 79-80, 40 S.Ct. 228, 231-232, 64 L.Ed. 460 (1920) (state cannot deny only nonresidents certain small personal exemptions); Crandall v. Nevada, 6 Wall. 35, 18 L.Ed. 744 (1868) (invalidating one dollar tax on state emigrants)); see also Dunn, supra (invalidating a durational residency requirement for voting); Shapiro, supra, 394 U.S. at 638, 89 S.Ct. at 1333 (invalidating durational residency requirement for welfare). But see Sosna v. Iowa, 419 U.S. 393, 406-08, 95 S.Ct. 553, 560-62, 42 L.Ed.2d 532 (1975) (distinguishing Memorial Hospital, Dunn, and Shapiro, in upholding a durational requirement before resident may sue for divorce in state court); Vlandis v. Kline, 412 U.S. 441, 452-53 n. 9, 93 S.Ct. 2230, 2236-37 n. 9, 37 L.Ed.2d 63 (1973) (one-year residency requirement, as condition for obtaining lower tuition rate at state institution for higher education, not unconstitutional).
[5] We note with irony that, as the statute is no longer in effect and the state asserts no power to recoup the energy credits that it approved in prior years, such a conclusion would lead in this case to precisely the same result as affirming the unconstitutionality of the prior residency provision.